OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Brennaman et al., Appellants, v. R.M.I. Company; Bechtel Group, Inc. et al., Appellees.
[Cite as Brennaman v. R.M.I. Co. (1994),     Ohio St.3d    .]
Statutes of repose -- Elements considered in determining whether an item is an improvement to real property under R.C. 2305.131 -- R.C. 2305.131 is unconstitutional.
1.  When determining whether an item is an improvement to real property under R.C. 2305.131, a court must look to the enhanced value created when the item is put to its intended use, the level of integration of the item within any manufacturing system, whether the item is an essential component of the system, and the item's permanence.
2.  R.C. 2305.131, a statute of repose, violates the right to a remedy guaranteed by Section 16, Article I of the Ohio Constitution, and is, thus, unconstitutional. (Sedar v. Knowlton Constr. Co. [1990], 49 Ohio St.3d 193, 551 N.E.2d 938, overruled.)
(No. 93-241 -- Submitted March 29, 1994 -- Decided -- October 5, 1994.)
Appeal from the Court of Appeals for Ashtabula County, Nos. 92-A-1689 and 92-A-1690.

In 1956, the predecessor in interest of R.M.I. Company, National Distillers Product Corporation, contracted with Bechtel Corporation to perform certain engineering and construction services related to the construction of a titanium metal plant in Ashtabula, Ohio. The project involved the refurbishing of an existing structure and construction of several smaller buildings, including what Bechtel chose to call "Sodium Handling Area 1100." The project was completed and turned over to National Distillers during the summer of 1958. In Area 1100, sodium is unloaded from railroad tank cars and piped to storage facilities, eventually to be used in the production of titanium sponge.

The sodium handling area consists of a warehouse-type building with large doors at each end. Railroad tracks run into the building, allowing tank cars to be rolled in for unloading. Unloading is accomplished by connecting the tank car to the plant's piping and storage system by the use of a

spool piece. The spool piece is a pipe approximately two feet long, threaded at one end and flanged at the other. The threaded end attaches to the tank car and the flange is connected to a valve which is in turn attached to the facility's main piping system. Once the tank car is connected to the piping system, the sodium is heated to a liquid state, pumped out of the car and piped to storage tanks within the facility.

On August 31, 1986, a valve connecting the spool piece to the main piping system in Area 1100 began to leak. Arthur A. McClellan and Robin K. Brennaman Terry, both general mechanics for R.M.I., were assigned the task of replacing the defective valve.

In order to complete the replacement, a sodium plug in the piping system immediately downstream from the valve needed to be created. This was accomplished by cooling the liquid sodium back to a solid state in a small portion of the pipe. Upon arriving at Area 1100, McClellan and Terry checked to see if the proper procedures had been made and then began removing the leaking valve. After they had removed the valve and placed it on the floor, a molten stream of sodium escaped from the system. McClellan, Terry, and fellow employee Edward Hensler were all splashed with molten sodium. The sodium ignited. Terry and Hensler died and McClellan was seriously injured as a result of the chemical release.

Within a year, on August 24, 1987, Lillian J. Hensler, administrator of the estate of Edward Hensler, Arthur A. McClellan and Marlene McClellan filed suit against R.M.I. Company. In a related suit, Jeannette Brennaman, executor of the estate of Robin K. Brennaman Terry, filed suit against the same defendant on August 31, 1987, also within a year of the accident. The two actions were consolidated and Bechtel (named as Bechtel Group, Inc. in the complaint), the William Powell Company ("Powell"), manufacturer of the valve being replaced, and Ohio Pipe Valves and Fittings, Inc. ("Ohio Pipe"), the distributor of the valve, were added as defendants. An amended complaint alleged negligence, products liability and breach of warranty on the part of Bechtel in the design and construction of the sodium handling system. Ultimately, R.M.I. was voluntarily dismissed and the remaining defendants moved for summary judgment. The trial court granted summary judgment to Bechtel, Powell and Ohio Pipe. The court of appeals affirmed summary judgment as to Bechtel and Powell, but reversed as to Ohio Pipe. The court of appeals held that the ten-year architects' and engineers' statute of repose for improvements to real property barred appellants' actions against Bechtel as a matter of law. Thereafter, plaintiffs filed their notice of appeal to this court.

The matter is now before this court upon the allowance of a motion to certify the record.

Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Thomas Mester, Richard C. Alkire, Joel Levin and Sandra J. Rosenthal, for appellants.

Ulmer & Berne, Murray K. Lenson and Edwin J. Hollern, for appellee Bechtel Group, Inc.

Weston, Hurd, Fallon, Paisley & Howley and William H.

Baughman, Jr., for appellee William Powell Company.

Casper & Casper, Michael R. Thomas and Margaret H. McCollum, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

Means, Bichimer, Burkholder & Baker Co., L.P.A., Robert G. Stafford, Richard W. Ross and Sherille D. Akin, urging affirmance for amici curiae Ohio Association of Consulting Engineers and American Consulting Engineers Council.

Pfeifer, J.

I

We are first asked to decide whether the law of fixtures should be applied when determining if an improvement to real property exists as that term is used in R.C. 2305.131. Citing Zangerle v. Std. Oil of Ohio (1945), 144 Ohio St. 506, 30 O.O. 151, 60 N.E.2d 52, appellants argue that fixture law should be applied and if it is, Sodium Handling Area 1100 is personal property, not a fixture, and hence cannot be classified as an improvement to real property. Therefore, appellants contend that R.C. 2305.131 is inapplicable and this action must be remanded to the trial court. Bechtel maintains that the court of appeals correctly relied on the Sixth Circuit's decision in Adair v. Koppers Co., Inc. (1984), 741 F.2d 111, and affirmance is therefore appropriate.

Central to our disposition of this matter is R.C. 2305.131, which provides:

"No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, more than ten years after the performance or furnishing of such services and construction. This limitation does not apply to actions against any person in actual possession and control as owner, tenant, or otherwise of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought."

R.C. 2305.131 bars tort actions against designers and engineers of improvements to real property which are brought more than ten years after completion of the construction services. Sedar v. Knowlton Constr. Co. (1990), 49 Ohio St.3d 193, 551 N.E.2d 938; Kocisko v. Charles Shutrump & Sons Co. (1986), 21 Ohio St.3d 98, 21 OBR 392, 488 N.E.2d 171. It is undisputed that Bechtel provided design and engineering services relative to the sodium handling facility more than ten years prior to appellants' injuries. Therefore, if applicable, R.C. 2305.131 would bar litigation of appellants' negligence action against Bechtel.

In support of their argument that the law of fixtures should apply, appellants rely on Zangerle v. Std. Oil, supra. In Zangerle, we were asked to interpret the phrase "land and improvements thereon" found in Section 2, Article XII of the Ohio Constitution in light of G.C. 5388 (115 Ohio Laws 564).

G.C. 5388 provided preferential tax treatment for certain personal property that was not regarded as an improvement to real property and was used in certain industries.  See now R.C. 5711.22(D).  With little discussion, we applied a fixture analysis to determine whether the property at issue was an improvement to land, or whether it was personalty.  Appellants now ask us to extend that analysis to an interpretation of R.C. 2305.131.

It is a general axiom of statutory construction that once words have acquired a settled meaning, that same meaning will be applied to a subsequent statute on a similar or analogous subject.  R.C. 1.42; cf. Goehring v. Dillard (1945), 145 Ohio St. 41, 30 O.O. 274, 60 N.E.2d 704.  The rule is premised on the assumption that the General Assembly is aware of the meaning previously ascribed to words when enacting new legislation.  Id.; R.C. 1.49.  This rule of construction is not appropriate here, as the threshold requirement of similarity in purpose and subject between R.C. 2305.131 and Section 2, Article XII has not been met.  Zangerle dealt with personal property taxation, whereas the present action is based on a dissimilar statute of repose.  R.C. 2305.131 was enacted in response to the expansion of common-law liability of architects and builders to third parties who lacked privity of contract. Sedar, supra, 49 Ohio St.3d at 199, 551 N.E.2d at 945, citing Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy (C.A.6, 1984), 740 F.2d 1362, 1368.  Without similarity of purpose or subject, the law of prior cases should not be interpolated in subsequent cases.  Therefore, since improvements to realty arise in two distinct contexts, the words of the statute must be read according to their common usage.  R.C. 1.42.

This is precisely the reasoning applied by the Sixth Circuit in Adair and adopted by the court of appeals.  After rejecting the plaintiff's fixture argument, the Adair court sought evidence of the common usage of the term "improvement to real property."  Since this court had not addressed the issue, the circuit court was left to "make a considered educated guess" as to how we would interpret the provision.  Adair, supra, 741 F.2d at 113.  In doing so, the court reviewed the law of several other states, a majority of which have adopted a common-sense interpretation of "improvement."  Id.

Black's Law Dictionary defines "improvement" as "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.  ***"  Black's Law Dictionary (6 Ed. 1990), at 757.

Webster's Third New International Dictionary (1961) 1138, defines the term as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs * * *."

In the instant case, Bechtel was hired to convert an existing facility into a titanium metals plant.  Consistent with this overall purpose, Bechtel constructed Sodium Handling

Area 1100. The area was essentially a material handling facility necessary to the delivery of raw materials to the processing plant. It is not argued that the production plant is something other than an improvement to real property; the issue is whether one part, the material handling facility, constitutes an improvement. Applying a common-sense definition of "improvement," we are convinced that Sodium Handling Area 1100 is an "improvement to real property" as that phrase is used in R.C. 2305.131.

Using a fixture analysis, appellants argue that the sodium handling facility can be removed from the land without decreasing the value of the real estate and, therefore, does not constitute an improvement. The issue is not the removability and effect of removal on real estate value, but the level of integration inherent in the system of which the component is a part. The analysis in the cases cited in Adair places less emphasis on the removability and degree of attachment of the item to the realty than on the increased value added to the realty when installed for its intended purpose. See Mullis v. S. Co. Serv., Inc. (1982), 250 Ga. 90, 296 S.E.2d 579. As described by one Ohio court, a fixture is an improvement to real property, but an improvement to real property is not necessarily a fixture. Jones v. Ohio Bldg. Co. (1982), 4 Ohio Misc.2d 10, 4 OBR 329, 447 N.E.2d 776, citing Keeler v. Commonwealth (1981), 56 Pa.Commw. 236, 424 A.2d 614.

We therefore conclude that when determining whether an item is an improvement to real property under R.C. 2305.131, a court must look to the enhanced value created when the item is put to its intended use, the level of integration of the item within any manufacturing system, whether the item is an essential component of the system, and the item's permanence.

Applying this standard to the facts at bar, we conclude that Sodium Handling Area 1100 is an improvement to real property and, hence, R.C. 2305.131 applies. The facility is much like the conveyor system in Adair in that it represents a transportation and storage process essential to the plant's ultimate production goals. Without the ability to unload and transport raw sodium, the plant would be unable to function as it now does and its economic utility would be severely hampered if not destroyed. As to the facility's permanence, it had been in place for almost thirty years prior to the accident and appellants have failed to demonstrate how the facility could be removed from the land upon which it sits. It would appear that it was and is the intention of R.M.I. and Bechtel that the facility will be in service until it is obsolete or the plant ceases operation. The mere conclusory statement in an affidavit that an item is not an improvement to real estate will not make it so.

Alternatively, appellants argue that what constitutes an improvement to real property is a question of fact for the jury and, therefore, summary judgment is improper. Jurors determine cases by applying their factual conclusions to the law as instructed by the court. The determination of legal issues is solely the province of the court. In the instant case, the facts are virtually undisputed. The only issue is whether the facility is an improvement to real property under R.C. 2305.131. Construction of a statute is not a question of fact

but a question of law.

II

Appellants argue that R.C. 2305.131 is unconstitutional. In Sedar, supra, we upheld the constitutionality of R.C. 2305.131. We revisit our conclusion in Sedar.

Section 16, Article I of the Ohio Constitution provides the following:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." (Emphasis added.)

This section of the Ohio Constitution protects the right to seek redress in Ohio's courts when one is injured by another.

In Burgess v. Eli Lilly & Co. (1993), 66 Ohio St.3d 59, 609 N.E.2d 140, this court held that the General Assembly is constitutionally precluded from depriving a claimant of a right to a remedy "before a claimant knew or should have known of her injury." Id. at 61, 609 N.E.2d at 141.

In the present case, R.C. 2305.131 deprived the plaintiffs of the right to sue before they knew or could have known about their or their decedents' injuries. The statute, being a statute of repose, precludes claimants from suing those who have negligently designed or constructed improvements to real property once ten years have elapsed since the tortfeasor rendered the flawed service. The injuries in this case occurred after the ten-year period had elapsed. Thus, R.C. 2305.131 precluded the plaintiffs from filing suit on account of the injuries.

At a minimum, Section 16, Article I requires that the plaintiffs have a reasonable period of time to enter the courthouse to seek compensation after the accident. R.C. 2305.131 conflicts with this constitutional right. As Justice Douglas concluded in his dissent in Sedar, "R.C. 2305.131 effectively closes the courthouse to [Brennaman] and individuals like [her] in contravention of the express language of Section 16, Article I, thereby violating constitutionally protected rights." Sedar, supra, 49 Ohio St.3d at 205, 551 N.E.2d at 950.

Today we reopen the courthouse doors by declaring that R.C. 2305.131, a statute of repose, violates the right to a remedy guaranteed by Section 16, Article I of the Ohio Constitution, and is, thus, unconstitutional. We overrule Sedar v. Knowlton Constr. Co. (1990) 49 Ohio St.3d 193, 551 N.E.2d 938.

Plaintiffs filed their complaints within one year after their causes of action arose, which we hold was within a reasonable time. Accordingly, on this matter, the holding of the court of appeals is reversed and this cause is remanded for trial.

III

By their last proposition of law, appellants argue that appellee, William Powell Company, should be held strictly liable as well as negligent for failure to provide warnings on the valve it manufactured. Appellants contend that it was incumbent on Powell to warn that the sodium system should be depressurized prior to replacement of a valve or injury would ensue. We agree with the court of appeals in rejecting this

argument on the basis of Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

Paragraph four of the syllabus in Temple provides:

"There is no duty to warn extending to the speculative anticipation of how manufactured components, not in and of themselves dangerous or defective, can become potentially dangerous dependent upon their integration into a unit designed and assembled by another."

In the present case, there is nothing in the record to suggest that the valve manufactured by Powell proximately caused appellants' injuries. It is undisputed that the valve had been removed and was lying on the ground at the time of the sodium release. Powell need not assume a duty it did not owe. The valve was merely a component of an overall system that Powell did not design or build. Summary judgment was properly granted.

For the foregoing reasons, the judgment of the court of appeals is reversed. The remaining causes against Bechtel and Powell are remanded to the trial court.

Judgment reversed<br>and cause remanded.

A.W. Sweeney, Douglas and Resnick, JJ., concur.

Moyer, C.J., Wright and F.E. Sweeney, JJ., concurs in part and dissent in part.

Moyer, C.J., concurring in part and dissenting in part. I concur with the majority's analysis of what constitutes an improvement to real property but disagree with the conclusion that R.C. 2305.131 is unconstitutional and, therefore, dissent from the judgment announced today.

A mere four years ago this court affirmed the constitutionality of R.C. 2305.131 in Sedar v. Knowlton Constr. Co. (1990), 49 Ohio St.3d 193, 551 N.E.2d 938. However, once again, the majority ignores the doctrine of stare decisis and the policy of consistency underlying it, to strike down a valid exercise of the General Assembly's power.

Any constitutional analysis begins with the proposition that legislative enactments enjoy a strong presumption of constitutionality. State ex rel. Jackman v. Court of Common Pleas of Cuyahoga Cty. (1967), 9 Ohio St.2d 159, 38 O.O.2d 404, 224 N.E.2d 906. It is not our duty to assess the wisdom of a statute but to determine whether it was enacted pursuant to the General Assembly's constitutional authority. Primes v. Tyler (1975), 43 Ohio St.2d 195, 72 O.O.2d 112, 331 N.E.2d 723.

As succinctly stated in Sedar, "[u]nlike a true statute of limitations, which limits the time in which a plaintiff may bring suit after the cause of action accrues, a statute of repose, such as R.C. 2305.131, potentially bars a plaintiff's suit before the cause of action arises." (Emphasis sic.) Sedar, supra, 49 Ohio St.3d at 195, 551 N.E.2d at 941. A statute of repose does not deny a remedy for a vested cause of action but, rather, bars the action before it ever arises. Id. at 201, 551 N.E.2d at 946. Therefore, no right of action ever accrued to appellants in which their constitutional rights to damages or jury determination arose.

Ohio's statute of repose for architects and engineers does not violate Section 16, Article I of the Ohio Constitution by denying appellants a remedy. Appellants have recourse through

workers' compensation which, given appropriate circumstances, may be enhanced through a VSSR award. Appellants may possibly have an action against the employer for an intentional tort. If the appellants had not been employees, they may have had causes of action under a premises liability theory. Appellants have not been denied redress for their losses but their monetary award has simply been predetermined by the laws of workers' compensation. Those who are dissatisfied with this result should seek to change the limitations imposed by workers' compensation rather than attack a constitutional exercise of the authority of the General Assembly.

Furthermore, as to the right to trial by jury, argued by the appellants but not addressed by the majority, the constitutional guarantee applies only to those actions recognized at common law at the time the Ohio Constitution was adopted. Belding v. State ex rel. Heifner (1929), 121 Ohio St. 393, 169 N.E. 301. While a cause of action in negligence existed at common law under trespass on the case, the doctrine of privity barred an action such as this against a builder by a third party at the time the Ohio Constitution was adopted. Sedar, supra; Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 633 N.E.2d 504. Therefore, no cause of action such as this existed at common law and, as such, no right to a jury trial existed.

As stated earlier, at common law appellants' actions against Bechtel would have been strictly barred by the doctrine of privity. The statute of repose strikes a rational balance between the rights of injured parties and the rights of architects and engineers who design and build improvements to real property. The majority's opinion exposes designers and builders to unlimited liability for the life of a structure that quite possibly will extend beyond the life of the builder. Successors in interest may very well be called upon to defend against suits after the actual designer has died. The statute of repose guards against this risk of stale litigation.

Furthermore, the majority ignores the rights of the builders. If a builder discovers a potentially hazardous defect in a building he or she has designed after that building has been turned over to the owner, the builder has no legal right to go on the property to correct the defect. The occupier of the real property is in control of the premises and could exclude the builder from entry. By assigning the risk of loss to the occupier of real property, the General Assembly has apportioned liability in a rational and equitable manner to that person best able to correct any problem.

In Sedar, we found the distinction between architects and occupiers to be rational because architects and engineers were no longer in control of the premises and therefore could not take the same corrective measures occupiers could. We also found ten years to be a rational standard to be applied in attempting to avoid the pitfalls of stale litigation. I believe that same reasoning applies today and, therefore, would uphold the constitutionality of R.C. 2305.131.

Wright and F.E. Sweeney, JJ., concur in the foregoing opinion.