**David Andrew CERVELLI, Plaintiff,**

v.

**THOMPSON / CENTER ARMS, et al., Defendants.**

**No. 2:99–CV–1409.**

United States District Court, S.D. Ohio, Eastern Division.

Jan. 25, 2002.

Daniel N. Abraham, Michael F. Colley Co., L.P.A.–2, Columbus, OH, for Plaintiff.

William F. Gibson, D. John Travis, Gallagher, Sharp, Fulton & Norman, Steven G. Janik, Steven Forbes, Janik & Dorman–2, Daniel Joseph White, Janik & Forbes, David Joseph Kovach, Sherry A. Croyle, Eileen M. Joyce, Janik & Dorman–2, Cleveland, OH, for Defendants.

### OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court on the motion of Defendant Thompson / Center Arms for Summary Judgment (Doc. # 44) and on the motion of Defendant Buffalo Bullet Co., Inc. for Summary Judgment (Doc. # 53). For the reasons that follow, Defendant Thompson / Center's motion is granted in part and denied in part, and Defendant Buffalo Bullet's motion is granted.

### I.

Plaintiff brings this action seeking recovery for injury sustained to his right eye in connection with his use of a .50 caliber Hawken muzzleloader rifle, manufactured by Defendant Thompson / Center Arms. Plaintiff also seeks redress for his injury from Defendant Buffalo Bullet Co., Inc., manufacturer of the bullet which was fired from the rifle. Plaintiff's Complaint presents two strict product liability claims— defect in design/manufacture and failure to warn—as well as claims for negligence and breach of express and implied warranties. The Court has jurisdiction over this action under 28 U.S.C. § 1332.

On December 31, 1997, Plaintiff was deer hunting on private farmland in Belmont County, Ohio with the Hawken muzzleloader rifle at issue in this case. Plaintiff, who is now thirty-three years old, has been hunting since he was four years old. (*Deposition of David Cervelli*, hereinafter *"Plaintiff's Depo."* at 9, 14). Plaintiff received the Hawken rifle from his parents as an assembly kit during Christmas 1983. (*Id.* at 18–19). Plaintiff, his brother, and his father assembled the rifle. (*Id.* at 21–23). Over the next fourteen years, Plaintiff used the rifle approximately 1,000 to 1,500 times without incident. (*Id.* at 64; 156). Although the Hawken manual advised users to wear shooting glasses when firing the rifle, Plaintiff never wore such glasses. (*Id.* at 58–60).

Plaintiff testified on deposition that, after each time he shot the rifle, he would clean it by removing the barrel, running hot water through it and using a black powder solvent to further dissolve any black powder from the rifle. (*Id.* at 40). Plaintiff was aware of the corrosive effect of black powder on the rifle. (*Id.*). Plaintiff did not remove and clean the nipple after every day the rifle was shot. (*Id.* at 47–48). When he did clean the nipple, he would remove it and run it through "extreme[ly] hot" running water. (*Id.* at 45). Plaintiff also used black powder solvent to "wipe the threads of the nipple." (*Id.*). Plaintiff would allow the nipple to dry before reinstalling it with a wrench until it was "snug and tight." (*Id.*). Plaintiff followed this practice on December 30, 1997. On the morning of December 31, 1997, he reinstalled the nipple into the breech of the rifle without difficulty. (*Id.* at 51).

On December 31, Plaintiff fired two to three percussion caps to prime the rifle and then opened the nipple and loaded 100 grains of black powder into the barrel. (*Id.* at 52). Plaintiff loaded a .50 caliber conical bullet into the rifle. (*Id.* at 112). Plaintiff took aim at a deer and fired and then felt a burning sensation in his right eye. (*Id.* at 54). When the rifle fired, the nipple released from the breech plug hole and broke the hammer. Plaintiff noticed that the hammer of the rifle was broken and the nipple was missing. (*Id.* at 97–98).

As a result of the incident, Plaintiff is blind in his right eye. Although he has undergone three surgeries to his eye, his physical movements have been hindered and he has been unable to work. Plaintiff seeks redress from both Thompson / Center Arms and Buffalo Bullet for the injuries sustained. The Defendants move for summary judgment on Plaintiff's claims.

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed.R.Civ.P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

## III.

**A. Defendant Thompson / Center Arms' Motion for Summary Judgment**

Defendant Thompson /Center moves for summary judgment on all of Plaintiff's

claims. The Court will consider the merits of the motion with respect to each claim.

### 1. Plaintiff's Claims for Strict Product Liability

Plaintiff's claim for strict product liability under R.C. § 2307.71, *et seq.*, encompasses two theories: strict liability for design /manufacture defect and strict liability for failure to warn. The Court will consider each separately.

#### *Defective Design / Manufacture*

█ In Ohio, in order to recover on a claim for defective design, the Plaintiff must show the following, by a preponderance of the evidence: "(1) [t]here was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss." *State Auto. Mut. Ins. Co. v. Chrysler Corp.*, 36 Ohio St.2d 151, 304 N.E.2d 891 (1973) (paragraph two of the syllabus); *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 523 N.E.2d 489, (1988).

█ The Ohio Supreme Court has adopted 2 Restatement of the Law 2d, Torts (1965) 347, Section 402A and the comments thereto, as the standard for establishing a cause of action in strict liability for injury from a defective product. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977). Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

█ In *Knitz v. Minster Machine Co.*, 69 Ohio St.2d 460, 432 N.E.2d 814 (1982), the Ohio Supreme Court set forth a two-prong test to determine whether a product design is defective. Under the first prong, referred to as the consumer expectation test, the design is in a defective condition when the product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Under the second prong, referred to as the risk/benefit analysis, the design is in a defective condition if the risk inherent in the design outweighs its benefits. Factors relevant to this analysis, include: (1) the likelihood that the product design will cause injury, (2) the gravity of the harm, and (3) the mechanical and economic feasibility of an improved design. *See Knitz*, 69 Ohio St.2d at 466, 432 N.E.2d 814.

In this case, Plaintiff claims that the Hawken rifle was defective in that it "resulted in the release of the nipple from the breach plug during firing, causing injury to the Plaintiff using the gun for its intended purpose." (*Complaint* at ¶ 35). Plaintiff also claims that the product was defective in that "it did not have proper guards or other protective safety features that would have prevented injury" such as Plaintiff sustained. (*Id.* at ¶ 39).

As a preliminary matter, the Court first considers Defendant Thompson / Center's

argument that it is entitled to summary judgment on Plaintiff's claim for defective design because Plaintiff's expert, Dr. Powell, did not opine "that a defect existed in the rifle when it left Thompson's control as required under the Ohio Products Liability Act, § 2307.74." (*Defendant's Motion for Summary Judgment* at 8). The Defendant argues that, under Ohio law, expert testimony is required, as a matter of law, in order to establish a *prima facie* case for design defect. The Defendant further argues that, without such testimony, no genuine issue of material fact exists with respect to alleged design defect. In response, Plaintiff simply states, without explanation, that "Powell rendered his opinions to a reasonable degree of engineering probability." (*Plaintiff's Memorandum contra* at 7).

In support of its position, Defendant cites the Ohio Supreme Court case of *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 203, 443 N.E.2d 978 (1983). Defendant's reliance on this case is misplaced. In *Goodson*, the Ohio Supreme Court, considering an issue of collateral estoppel, noted in *dicta* that questions of design defect "are very technical, requiring expert testimony to bring out the specifics." The case does not stand for the proposition that expert testimony is required, as a matter of law, in order to establish a *prima facie* case for design defect under Ohio law.

Rather, "it will often be necessary for a plaintiff bringing a design defect claim to present expert testimony in support of that claim, [although] expert testimony is not always required to prove the material elements of a design defect claim. In some cases, circumstantial evidence alone, without expert testimony, will suffice to document the existence of a design defect." *Atkins v. General Motors Corp.*, 132 Ohio App.3d 556, 564, 725 N.E.2d 727 (1999) (internal citation omitted).

■ In this case, Plaintiff's claim for design defect rests entirely on the opinion of Charles W. Powell, P.E., who, as Defendant correctly points out, is of the view that the rifle was not defective in design. Rather, Powell opines that the corrosion of nipple threading caused the nipple to be insecurely held, resulting in ejection of fragments of the nipple and percussion cap. Powell unequivocally states that the corrosion occurred during rifle use; not from the design and manufacture. Powell's entire analysis is as follows:

A. In my opinion, the nipple threading in Mr. Cervelli's rifle was corrosion damaged and abraded from usual and foreseeable use and maintenance over the 14 year life span of the rifle. The inside nipple threading of the rifle (A) above is largely destroyed and corrosion damaged. . . .

C. In my opinion, the corrosion damage to the subject rifle's nipple internal threading caused the nipple to be insecurely held within the rifle's bolster, allowing it to eject when the rifle was fired. Plug gage inspection of the subject rifle's inside nipple threading determined an internal threaded hole diameter of 0.255″ to 0.259″ over the first 3/16″ of thread depth. These values are much larger than the ANSI Standard B1.1, *American National Standard for Unified Inch Screw Threads*, listed value of 0.220″, and far too large to hold a nipple's listed external threading maximum diameter of 0.249″. Because the internal nipple threads on the subject rifle exhibit no visual signs of recent fracture or metal smearing, at the time of the rifle's discharge which injured Mr. Cervelli, the nipple was loose in its breech plug installation hole and was ejected with its cap fragments due to this looseness.

D. Although also damaged by corrosion, the thread crests near the very bottom of the breechplug hole on the subject rifle had an internal thread crest diameter of 0.211–0.212″. This measurement shows that the original threading in this threaded nipple hole met the ANSI internal thread height requirements at the time of manufacture. This presence of this bottom vestigial thread crest, even though it is corrosion damaged and rounded, shows that the thread damage observed in the subject rifle was created during rifle use, from corrosion and wear. No evidence of cross-threading or other types of severe mechanical thread damage from use was noted.

E. In my opinion, the 2–3 thread crests manufactured by Thompson / Center Arms in the 1/4–28 threaded nipple hole, are sufficient to support and hold a standard nipple during normal black powder rifle discharges, based upon the standard Rockwell B scale hardness measurements on the breechplug. During Mr. Cervelli's use of the rifle and his cleaning and checking of the rifle's nipple, the subject rifle's nipple became worn, corroded and released the nipple during the firing of the rifle. The breechplug's cast steel material, of measured Rockwell B Scale hardness of 81.9 average, is sufficiently strong to retain a nipple in its internal threading provided that the threading is uncorroded and undamaged.

F. In my review of the two Thompson / Center Arms literature copies reportedly provided with this rifle, there is no reference to inspection or cleaning these critical threads. In my opinion this omission of warnings and instructions to the owner of this rifle by Thompson / Center Arms caused the neglect of these threads by Mr. Cervelli, their subsequent deterioration, and release of the nipple/cap fragments.

H. Thompson / Center Arms is aware of the consequences of injury and/or death from failure to retain the nipple properly during rifle discharge. I have included with this letter a copy of the label provided by Thompson / Center Arms with their replacement nipples. (Exhibit B). Although the warning provided here does not tell a user how to inspect these threads, it does recognize the danger of improper nipple installation. Proper nipple installation requires sufficient nipple hole threads, of sufficient manufactured strength, to retain it.

I. The subject rifle experienced high barrel pressures from the propellant and bullet used at the time of the nipple failure. The listed barrel pressure for a 100 grain Goex FF black powder load using a Buffalo Bullet is approximately 12,000 psi. This is 85% more pressure than the reported rifle barrel pressure given by Thompson/Center Arms in its literature provided with the subject rifle. This rifle barrel pressure that the nipple was exposed to, at the time of thread failure and Mr. Cervelli's injury, was sufficient to eject the nipple, its percussion cap, and cause internal damage to the rifle, evidenced by the free motion of the hammer. There is no permanent external evidence of excessive barrel pressure, for example a bulged barrel, but a combination of the loaded propellant and the conical bullet produced a large barrel pressure, insufficient to deform the barrel, but sufficient to eject the nipple with a high velocity. The large weight (365 grainnominal) conical bullets reportedly used in this case will normally generate higher pressures than normal round ball loads with the same amount of propellant used. This rifle, according to its literature, is suitable for use with conical bullets of this weight.

Thompson/Center and Buffalo Bullet in its instructions and labeling failed to warn the user of such conical bullets to expect greater barrel pressures from use of the Buffalo Bullet in he Hawken rifle and to check the barrel closures, such as the breechplug and nipple threading to insure that they are in sufficient condition to use the higher pressure ammunition.

November 28, 2001 Report of Charles E. Powell, P.E., attached to *Plaintiff's Memorandum contra Defendant Thompson / Center's Motion for Summary Judgment.*

Aside from this opinion, the Plaintiff offers no evidence in support of his claim that the Hawken rifle was defectively designed/ manufactured. As a result, the Court concludes that Plaintiff has failed to establish a *prima facie* case of design/manufacture defect under Ohio law. The Plaintiff's own expert has opined that the Hawken rifle was not defective in design or manufacture at the time it was sold. Defendant Thompson / Center Arms is entitled to summary judgment on this claim.

### Failure to Warn

Plaintiff also brings a claim under the Ohio strict product liability statute, R.C. § 2307.76, for alleged failure to warn. In particular, Plaintiff claims that Hawken rifle "contained no or inadequate instructions and/or warning, danger or caution labels to alert the person using the gun of the danger associated with the gun, including the release of the nipple from the breach plug when the gun is fired." (*Id.* at ¶ 36). Plaintiff further claims that the Defendant failed to provide warning of the "risk to the Plaintiff considering the likelihood that the product would cause harm of the type and nature for which Plaintiff seek[s] compensation...." (*Id.* at ¶ 38).

 In Ohio, a Plaintiff pursuing a product liability claim on a theory of failure to warn or failure to warn adequately may plead the allegations under the both negligence and strict liability theories. *Crislip v. TCH Liquidating Co.*, 52 Ohio St.3d 251, 256, 556 N.E.2d 1177 (1990). Under either theory, the Plaintiff must prove

> that the manufacturer knew, or should have known, in the exercise of ordinary care, of the risk or hazard about which it failed to warn. Further, there will be no liability unless it be shown that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public. Thus, the standard imposed upon the defendant in a strict liability claim grounded upon an inadequate warning is the same as that imposed in a negligence claim based upon inadequate warning.

*Id.* at 257, 556 N.E.2d 1177 (internal footnote omitted).

 However, as the Ohio Supreme Court has recognized, one important difference between the theories is the availability of the defense of comparative negligence.

> A finding of comparative negligence by the plaintiff in a cause of action for negligent failure to warn or warn adequately reduces the amount of damages awarded, or bars recovery completely if the plaintiff is found to be more at fault than all parties from whom he seeks recovery. R.C. 2315.19. However, comparative negligence cannot be raised as a defense to a cause of action in strict liability.

*Id.*

With respect to a strict liability claim, R.C. § 2307.76 provides:

(A) Subject to divisions (B) and (C) of this section, a product is defective due to

inadequate warning or instruction if either of the following applies:

(1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

(2) It is defective due to inadequate post-marketing warning or instruction if, at a relevant time after it left the control of its manufacturer, both of the following applied:

(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

(b) The manufacturer failed to provide the post-marketing warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

(B) A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge.

■ In this case, Defendant Thompson / Center Arms contends that summary judgment is appropriate on Plaintiff's strict liability failure to warn claims because a gun is a "simple tool" the danger of which is "open and obvious" to the user. In support of this position, the Defendant relies upon *Davis v. McCourt,* 226 F.3d 506 (6th Cir.2000). In that case, the Plaintiff was the estate of a shooting victim. The shooter pointed a rifle at a friend in an allegedly playful manner after removing the magazine clip, emptying the shells and reinserting the clip. Although the shooter claimed that a bullet was not in the rifle's chamber, the gun discharged a bullet and struck the decedent in the head. The Plaintiff claimed that the manufacturer of the semiautomatic rifle had a duty to warn the user of the possibility that a bullet could be left in the chamber even though the magazine clip was removed. The Sixth Circuit rejected this theory.

The Court held that, under Michigan law, a gun is a simple tool. The Court further held that the danger associated with a loaded gun is open and obvious and that the manufacturer had no duty to warn of the possibility that a bullet could be left in the chamber. The fact that the shooter claimed that he did not know the gun was loaded was of no consequence. The shooter picked the gun up, aimed, fired it, and the gun performed its function. The Court held that any reasonable user should have known not to point a gun at another human being. Moreover, the Court observed that the shooter's action of intentionally aiming and firing was the superceding cause of the decedent's death. *Id.* at 512–13.

This Court agrees that a gun is a simple tool. The Court concludes, however, that the danger identified in the case at bar is not analogous to that in *Davis* and, consequently, the danger cannot be labeled as "open and obvious" so as to preclude a failure to warn claim. The danger at issue in this case is that of the shooter *himself* being injured when picking up a gun and firing it. The danger alleged by Plaintiff is not in the aiming and shooting of the gun; rather, the danger alleged is one that a mechanical wearing down of threads could cause the nipple to eject and become a dangerous projectile. This type of danger is not one that is open and obvious. The Court notes that the case of *Pfaff v. Benjamin Air Rifle Co.*, No. 71998, 1997 WL 764761 (Dec. 11, 1997), does not, as Defendant suggests, hold to the contrary. In that case, the shooter of a paint gun aimed at another individual and struck the individual in the eye. The Court also held that this danger was open and obvious. Once again, this case differs from the instant action where the shooter *himself* was struck in the eye in a manner not similar to a single discharge of the gun.

In sum, the Court concludes that to the extent Defendant Thompson / Center Arms seeks summary judgment on the basis of an open and obvious danger, the motion is without merit.

### 2. Plaintiff's Negligence Claim

■ Plaintiff claims that both Defendants Thompson / Center Arms and Buffalo Bullet owed a duty of reasonable care to Plaintiff to protect him from foreseeable risks of harm posed by their products. Plaintiff claims that the Defendants breached duties owed to him in that they "negligently researched, tested, manufactured, designed, developed, distributed, labeled, advertised, marketed, inspected, configured, and /or sold the gun and the bullet . . . ." (*Complaint* at ¶ 25). Plaintiff further claims that the Defendants were negligent in their alleged failure to "provide proper guards and/or other protective safety features that would have prevented injury . . . ." (*Id.* at ¶ 26). Plaintiff claims that the Defendants were also negligent in their failure to "warn and/or alert the Plaintiff to the dangers and hazards associated with the use of the gun and the bullet." (*Id.* at ¶ 27). Finally, Plaintiff claims that the Defendants "knew or should have known that the gun and/or bullet were unreasonably dangerous and harmful to persons such as Plaintiff . . . who used the gun and the bullet for the purpose for which they had been designed." (*Id.* at ¶ 28).

Defendant Thompson/ Center moves for summary judgment on these claims. First, the Defendant contends that Plaintiff has offered no evidence in support of a theory of negligent design/manufacture of the Hawken rifle. The Defendant further argues that Plaintiff offers no evidence to support that an allegedly defective design was the proximate cause of Plaintiff's injuries. This Court agrees. As indicated *supra*, Plaintiff's claims are premised on the opinion of Dr. Powell, who unequivocally opined that the rifle was not defective in design or manufacture. Consequently, to the extent the Plaintiff's negligence claim is premised on such a theory, Defendant Thompson Center is entitled to summary judgment.

The Court also concludes that Defendant is entitled to summary judgment to the extent that Plaintiff claims negligence for Defendant's alleged failure to provide proper guards and/or safety features on the rifle. Plaintiff has adduced no evidence that would support a duty in this regard.

With respect to Plaintiff's negligence claim premised on the theory of failure to

warn or failure to warn adequately, the Plaintiff must prove that Defendant

> knew, or should have known, in the exercise of ordinary care, of the risk or hazard about which it failed to warn. Further, there will be no liability unless it be shown that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public. Thus, the standard imposed upon the defendant in a strict liability claim grounded upon an inadequate warning is the same as that imposed in a negligence claim based upon inadequate warning.

*Crislip v. TCH Liquidating Co.,* 52 Ohio St.3d 251, 257, 556 N.E.2d 1177 (1990). As the Court indicated *supra,* under a negligence theory, the defense of comparative negligence applies to a failure to warn claim.

 Plaintiff's failure to warn claim is based upon the testimony of Charles Powell, identified above. Powell opines that the "corrosion damage to the subject rifle's nipple internal threading caused the nipple to be insecurely held within the rifle's bolster allowing it to eject when the rifle was fired." Powell further opines that because "the nipple was loose in its breech plug installation hole and was ejected with its cap fragments due to this looseness." (Nov. 28, 2001 Opinion of Powell at ¶ C). Powell noted that in his review of the literature provided by Thompson / Center to Plaintiff "there is no reference to inspection or cleaning these critical threads. [T]his omission of warnings and instructions to the owner of this rifle ... caused the neglect of these threads by Mr. Cervelli, their subsequent deterioration and release of the nipple/cap fragments." (*Id.* at ¶ F).

Based on these opinions, the Court finds that genuine issues of material fact exist as to whether the failure to warn of the proper inspection and cleaning of the nipple threads and the possibility of ejection of the nipple as a result caused Plaintiff's injury. The Court rejects the Defendant's argument that because it was the percussion cap fragments rather than the nipple that hit Plaintiff in the eye, proximate causation is lacking. Notwithstanding that the cap fragment is what actually hit Plaintiff in the eye, as Dr. Powell opined, if the nipple were securely held, the percussion cap could not have been driven into the Plaintiff's eye. Thus, it is for the jury to consider whether the failure to warn of the importance of a secure nipple was the proximate cause of Plaintiff injury.

The Defendant points out, however, Plaintiff's admission that he reviewed the manual provided by Thompson / Center in 1983, which clearly states:

> Wear shooting glasses. Priming charges (pieces of percussion caps and burning powder particles from a flint lock) tend to fly. Protect your eyes with glasses and your arms with clothing
> . . . .

Thompson / Center Hawken Manual at 4 [1] attached to *Plaintiff's Memorandum contra.* Plaintiff testified on deposition that he was not wearing shooting glasses at the time of the accident. (*Plaintiff's Depo.* at 58). The Defendant contends that Plaintiff's failure to wear shooting glasses precludes his recovery for alleged negligent failure to warn.

 In certain cases, summary judgment is appropriate if the Plaintiff's own negligence, as a matter of law, outweighs any negligence of the Defendant. *See Ri-*

---

1. The Court notes that the page number reflected is by the Court's own calculation since page numbers are not provided.

*ley v. Burnup & Sims Comtec, Inc.,* No. 1–90–113, 1991 WL 216783 (1991). In *Sproles v. Simpson Fence Co.,* 99 Ohio App.3d 72, 649 N.E.2d 1297 (1994), the Ohio Court of Appeals concluded that the Plaintiff's own negligence outweighed any negligence of the manufacturer of an electric gate for alleged failure to warn of the hazards associated with using the gate. In that case, although the Plaintiff was aware that he could turn off the electric power supply to the gate, he attempted to grease the gate's chain with the power on. The gate began to operate and severed Plaintiff's finger. The trial court held that reasonable minds could only conclude that Plaintiff's own negligence precluded his failure to warn claim; the Court of Appeals affirmed.

This Court is not convinced, however, that reasonable minds could come to but one conclusion in the case at bar. While Plaintiff testified that he reviewed the Thompson / Center Arms manual in 1983 which warned users to wear shooting glasses, Plaintiff had fired the rifle for many years without incident despite his failure to wear glasses. In addition, the manual does not warn users of the importance of care and inspection of the nipple threads or the possibility that if the threads are deteriorated, the nipple may eject upon firing. Further, the manual warns that protective glasses are needed because "pieces of percussion caps and burning powder particles ... tend to fly." (*Thompson / Center Hawken Manual* at 4). In addition, the Court notes that the accident occurred in 1997—fourteen years after Plaintiff reviewed the manual.

The warning to wear glasses advised the Plaintiff only of the danger to his eyes from pieces of percussion caps or burning powder particles, both of which represent obvious risks to anyone shooting the rifle. There is no warning, however, as to an ejecting nipple, which, unlike a piece of a percussion cap or particles of burning powder, is a solid metal object much more capable of causing serious injury to the eye, either by direct contact or by indirectly propelling at a much greater speed and force than a piece of the percussion cap.

In sum, in the Court's view, a genuine issue of material fact exists with respect to whether the failure to warn caused Plaintiff's injury. An issue of fact also exists as to whether Plaintiff's admitted failure to wear shooting glasses bars any successful claim he may have for the Defendant's alleged failure to warn of proper cleaning and maintenance of the nipple threads.

The Court concludes that Plaintiff may present a claim for negligent failure to warn of the proper cleaning and inspection of nipple threads and the possible ejection of the nipple as a result of thread deterioration, to the jury. The Defendant may present evidence as to the impact of Plaintiff's own negligence on this claim.

### 3. Plaintiff's Claims for Breach of Express and Implied Warranties

■ Plaintiff alleges that the Defendants "expressly warranted that their products, the gun and/or the bullet, [were] reasonably fit for [their] intended use without endangering human safety." (*Complaint* at ¶ 47). Plaintiff claims that Defendants breached this express warranty "in that the products ... [were] defective and dangerous to reasonably foreseeable users like the Plaintiff." (*Id.* at ¶ 48).

Plaintiff also alleges that the Defendants "impliedly warranted that their products [were] of good and merchantable quality, fit and safe for [their] ordinary and intended use without endangering human safety." (*Id.* at ¶ 54). Plaintiff claims that the Defendants breached this implied warranty because the rifle was allegedly defective and dangerous. (*Id.* at ¶ 55).

In Ohio, the common law claim for breach of express warranty has been codified and is found at R.C. § 2307.77, which provides:

A product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation.

A Plaintiff seeking to recover under this statute must show:

(1) that the manufacturer made a representation as to a material fact concerning the character or quality of the manufacturer's product;

(2) that the product did not conform to that representation;

(3) that the plaintiff justifiably relied on that representation; and

(4) that the plaintiff's reliance on the representation was the direct and proximate cause of the plaintiff's injuries

*White v. DePuy, Inc.*, 129 Ohio App.3d 472, 484–85, 718 N.E.2d 450 (1998). Where a Plaintiff fails to identify a representation by the manufacturer, a claim for breach of express warranty must fail. *Id.*

In this case, both Defendants argue that Plaintiff has failed to identify any representation made by the Defendants with respect to a material fact concerning the character or quality of their products. Indeed, in opposing the Motions for Summary Judgment, Plaintiff fails to identify any such representations. Consequently, the Court concludes that Plaintiff's claims for breach of express warranty as to both Defendants are without merit. The Defendants are entitled to summary judgment on these claims.

With respect his claims for breach of implied warranty, the Ohio Products Liability Law preempts any common law claims Plaintiff asserts. A common law claim for breach of implied warranty is only available when solely economic loss is sought as recovery for an allegedly defective product. *LaPuma v. Collinwood Concrete*, 75 Ohio St.3d 64, 661 N.E.2d 714 (1996); *Nadel v. Burger King Corp.*, 119 Ohio App.3d 578, 695 N.E.2d 1185 (1997). Since Plaintiff's claims in the case at bar are for bodily injury, the Court concludes that Plaintiff's recovery is limited to the claims encompassed by the Product Liability Act. The Defendants are entitled to summary judgment on Plaintiff's breach of implied warranty claims.

## B. Defendant Buffalo Bullet's Motion for Summary Judgment

Defendant Buffalo Bullet moves for summary judgment on all of Plaintiff's claims, to wit: strict liability for design/manufacture defect and failure to warn; negligence for design/manufacture defect and failure to warn, and breach of express and implied warranties.

As the Court previously stated, Plaintiff supports his theories with the opinion testimony of Dr. Powell. With respect to the role of the bullet in Plaintiff's injury, Dr. Powell opined:

I. The subject rifle experienced high barrel pressures from the propellant and bullet used at the time of the nipple failure. The listed barrel pressure for a 100 grain Goex FF black powder load using a Buffalo Bullet is approximately 12,000 psi. This is 85% more pressure than the reported rifle barrel pressure given by Thompson/Center Arms in its literature provided with the subject rifle. This rifle barrel pressure that the nipple was exposed to, at the time of thread failure and Mr. Cervelli's injury, was

sufficient to eject the nipple, its percussion cap, and cause internal damage to the rifle, evidenced by the free motion of the hammer. There is no permanent external evidence of excessive barrel pressure, for example a bulged barrel, but a combination of the loaded propellant and the conical bullet produced a large barrel pressure, insufficient to deform the barrel, but sufficient to eject the nipple with a high velocity. The large weight (365 grainnominal) conical bullets reportedly used in this case will normally generate higher pressures than normal round ball loads with the same amount of propellant used. This rifle, according to its literature, is suitable for use with conical bullets of this weight. Thompson/Center and Buffalo Bullet in its instructions and labeling failed to warn the user of such conical bullets to expect greater barrel pressures from use of the Buffalo Bullet in the Hawken rifle and to check the barrel closures, such as the breechplug and nipple threading to insure that they are in sufficient condition to use the higher pressure ammunition.

November 28, 2001 Report of Charles E. Powell, P.E., attached to *Plaintiff's Memorandum contra Defendant Thompson / Center's Motion for Summary Judgment.*

Aside from this opinion, Plaintiff offers no evidence to support a theory that the bullet itself was defective in design or manufacture under a strict liability or a negligence theory. Consequently, in light of the standards outlined above, the Court concludes that no genuine issues of material fact exist with respect to these claims and Defendant Buffalo Bullet is entitled to summary judgment on the same.

In addition, as stated *supra,* the Court concludes that Buffalo Bullet is entitled to summary judgment on Plaintiff's claims for breach of express and implied warranties. With these issues resolved, the Court will examine the claims for failure to warn, in greater detail.

### 1. Failure to Warn

Defendant Buffalo Bullet contends that it is entitled to summary judgment on Plaintiff's failure to warn claims. In particular, the Defendant argues that it had no duty to warn Plaintiff of the increased barrel pressure associated with use of a conical bullet or the possibility of nipple ejection associated with such increased barrel pressure.

In Ohio, whether a manufacturer of a product has a duty to warn is purely a question of law. *Mussivand v. David,* 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). As the Defendant correctly points out, under Ohio law, "a manufacturer of a non-defective component part has no duty to warn of the dangers that may result when the part is integrated into another product or system, *where the component manufacturer was not involved in the design or assembly of the integrated product or system.*" *Schaffer v. A.O. Smith Harvestore Products, Inc.,* 74 F.3d 722, 729 (6th Cir.1996) (emphasis in original), citing *Brennaman v. R.M.I. Co.,* 70 Ohio St.3d 460, 639 N.E.2d 425 (1994).

In *Brennaman,* the Ohio Supreme Court considered whether the manufacturer of a valve that was integrated into a sodium handling facility improvement to a titanium plant could be held liable for failure to warn that the sodium system should be depressurized prior to replacement of the valve in order to avoid injury. The Court concluded that " '[t]here is no duty to warn extending to the speculative anticipation of how manufactured components, not in and of themselves dangerous or defective, can become potentially dangerous dependent upon their integration into a unit designed and assembled by anoth-

er.'" *Brennaman,* 70 Ohio St.3d at 467, 639 N.E.2d 425, quoting *Temple v. Wean,* 50 Ohio St.2d 317, 364 N.E.2d 267 (1977) (syllabus).

The Court concludes that this rule applies in the case at bar. Defendant Buffalo Bullet manufactured a product not itself defective, but that had the potential to become defective when integrated into the Hawken rifle with deteriorated threads. Under Ohio law, since Buffalo Bullet had no role in the design or assembly of the rifle, there is no basis upon which to find a duty on Buffalo Bullet's part to warn of the increased barrel pressure associated with use of a conical bullet or the possibility of nipple ejection associated with such increased barrel pressure. Further, the Court finds no basis upon which to conclude that there was a duty for Buffalo Bullet to have warned Plaintiff as to the proper cleaning and inspection of the Hawken rifle.

Moreover, this Court concludes that the unrefuted evidence establishes that the bullet at issue was not the proximate cause of Plaintiff's injury. As Defendant Buffalo Bullet points out, Plaintiff's own expert, Powell, testified on deposition that, in his opinion, the corrosion of the nipple threads would have caused the ejection even under normal firing pressure. (*Deposition of Charles E. Powell* at 204). Powell further testified that if the rifle had been in proper condition, the same bullet would have not caused the nipple ejection despite the higher barrel pressure associated with the conical bullet at issue. (*Id.* at 211). There is no contrary evidence in the record with regard to the role the bullet played in Plaintiff's injury. Consequently, the Court concludes that Buffalo Bullet is entitled to summary judgment on Plaintiff's claims of failure to warn under both the strict liability and negligence theories.

## IV.

In light of the foregoing, Defendant Thompson / Center Arms Motion for Summary Judgment (**Doc. # 44**) is **GRANTED in part and DENIED in part,** consistent with the above. Defendant Buffalo Bullet Co., Inc.'s Motion for Summary Judgment (**Doc. # 53**) is **GRANTED.**

**IT IS SO ORDERED.**