RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0091p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FENCORP, CO.,
    *Plaintiff-Appellee/Cross-Appellant,*

    *v.*

OHIO KENTUCKY OIL CORPORATION; CAROL
L. CAMPBELL,
    *Defendants-Appellants/Cross-Appellees.*

Nos. 09-4317/4320/4321/4322

_____

On Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 06-00506; 06-00260—John R. Adams, District Judge.

Argued: March 4, 2011

Decided and Filed: April 4, 2012

Before: COLE, GIBBONS, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Thomas W. Connors, BLACK, McCUSKEY, SOUERS & ARBAUGH, Canton, Ohio, for Appellants. Dennis R. Rose, HAHN, LOESER & PARKS LLP, Cleveland, Ohio, for Appellee. **ON BRIEF:** Thomas W. Connors, Gordon D. Woolbert, II, BLACK, McCUSKEY, SOUERS & ARBAUGH, Canton, Ohio, for Appellants. Dennis R. Rose, Eric B. Levasseur, Steven J. Mintz, HAHN, LOESER & PARKS LLP, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. This case involves allegations of fraud and misrepresentation in the issuance of securities related to oil and gas interests. Following a jury verdict for plaintiff-appellee Fencorp, Co. ("Fencorp"), defendants-

appellants Ohio Kentucky Oil Corporation ("OKO") and Carol L. Campbell appeal and raise numerous issues. Fencorp cross-appeals and raises two additional issues. For the reasons that follow, we reverse the district court's entry of judgment on damages but otherwise affirm its rulings.

I.

This case stems from a series of investments made by Frederick E. Nonneman with OKO. Nonneman invested money both personally and through Fencorp, a family investment corporation he formed in 1986. Many of these investments were in domestic oil and gas although Nonneman had no experience in drilling wells or running an oil and gas company.

From 2000 to 2003, Nonneman, who was president of Fencorp until 2004, when his daughter, Lois Nonneman, succeeded him, invested $3,980,345.50 with OKO through Fencorp, of which $1,012,835.50 was invested after March 6, 2001 (the relevant date for the Ohio five-year securities statute of repose). The investments included twenty-one joint ventures and five limited partnerships. Evidence showed that Nonneman expected to receive favorable tax treatment.

During the time period in question, Nonneman was showing the beginning signs of dementia and suffering from disabilities. Eventually, Gregory Nolfi, a trusted business advisor, assumed management of Nonneman's affairs as successor trustee on November 5, 2003. By this time it had become apparent that the OKO investments would yield no returns. Of the one hundred twenty-eight wells drilled by OKO, only eleven produced oil, and they did not produce enough to recoup the investment, let alone return a profit to Fencorp, even taking account of tax benefits.

Upon assuming control, Nolfi went to OKO to learn more about the transactions. He was unsuccessful, and Nolfi and Lois Nonneman filed suit in Ohio state court. The state court lawsuit on Nonneman's personal behalf was filed December 22, 2004. Fencorp was not named as a plaintiff in this suit.

During discovery for the state lawsuit, Nolfi and Lois Nonneman learned of facts and circumstances that gave rise to federal and state securities claims. Fencorp's representatives learned that William M. Griffith, the founder of OKO, and Carol L. Campbell, Griffith's daughter and the president of OKO during the relevant time period, had been persistent in their pursuit of sales to Frederick Nonneman. Griffith touted the virtues of the drilling joint-ventures and included grandiose promises of rich rewards, promises not tempered by cautions or warnings that the exploratory drilling OKO planned had a low chance of success. Evidence showed that Nonneman had grown to trust Griffith, and that Griffith exploited that trust by pressing for more investment opportunities, encouraging hurried transactions, and bestowing gifts on Nonneman's wife.

Griffith thus persuaded Nonneman to invest over three million dollars with OKO through Fencorp, but the investments failed to return as promised. Moreover, OKO's pricing and other behavior were suspicious. The terms of the investments provided that if no oil was found, OKO would keep the excess funds invested. As a drilling company, OKO made money by drilling the wells; then, if no oil was found, completion costs would be unnecessary, and OKO would make even more profit because it could keep the remainder of Nonneman's investment. Ostensibly for this reason, OKO did not drill in areas where it was likely to strike oil. Additional evidence revealed that OKO had overstated its costs and had billed substantial and unexplained internal overhead, including expenses at restaurants and stores, employment of Griffith's family, and purchases of a personal plane, a house, and horses for Griffith.

After learning these facts, Nolfi and Lois Nonneman filed federal and state securities claims on Nonneman's personal behalf. About a month after the federal lawsuit on Nonneman's personal behalf was filed, on March 6, 2006, Fencorp filed a case against OKO and Carol L. Campbell alleging (1) violations of § 12(a)(1) of the Securities Act of 1933, 15 U.S.C. §77l(a)(1), (2) violations of the Ohio Blue Sky laws by the sale of unregistered securities, (3) federal securities fraud, (4) misrepresentation, (5) common law fraud, (6) breach of fiduciary duties, and (7) breach of contract.

Fencorp also sought punitive damages. Although the district court declined to exercise supplemental jurisdiction over Nonneman's personal state law claims, it retained jurisdiction over Fencorp's state law claims. On March 23, defendants moved to consolidate the two federal cases, which the district court granted on May 9, 2006. Both Nonneman's personal claims and Fencorp's claims against OKO and other defendants were therefore tried together. Appeals from the two cases have proceeded separately.

The district court ruled on several pre-trial motions relevant to this appeal. First, the district court dismissed many of Fencorp's §12(a)(1) non-registration claims as being beyond the three-year statute of repose, and the court found that equitable tolling did not apply. In addition, the district court denied defendants' motion to dismiss, finding that the complaint adequately pled particularity, *scienter*, reliance, and loss causation.

After discovery, both parties moved for summary judgment. First, the district court dismissed the remaining §12(a)(1) claims for being outside the one-year statute of limitations. Second, the court denied summary judgment to Fencorp on its Ohio non-registration claims on the ground that whether OKO's securities were exempt was a question of fact. Third, the court denied defendants' § 10(b) summary judgment motion. Fourth, the court dismissed Fencorp's Ohio Blue Sky claims from prior to March 6, 2001, as being beyond the statute of repose, but it refused to dismiss claims filed between March 6, 2001, and March 6, 2002 because the statute of repose, which was four years at the time the investments were sold but had been changed to five years by the Ohio General Assembly, only creates a substantive right once the limitation period has run. Fifth, the district court rejected defendants' argument that federal law preempted Fencorp's Blue Sky claims because whether defendants' products were rightfully exempt from registration under SEC Rule 506 depended on whether OKO had engaged in a "general solicitation," a question of fact. Finally, the district court denied defendants' motion for summary judgment on the state law breach of contract claim. Defendants had argued that a "general accounting" between partners must take place before such a claim could be brought, but the district court found that the partnership

interests here were not so complex as to require an accounting before the court could resolve the contractual dispute.

As the case proceeded, OKO thwarted Fencorp's efforts to obtain discovery on whether OKO had engaged in a general solicitation. Not only did OKO refuse to hand over requested documents, but also one of its executives admitted that OKO had destroyed some of the documents Fencorp had requested for the case. OKO did not institute a "litigation hold" on these documents during the state and federal lawsuits. The district court found that defendants had violated a discovery order: "[T]he defendants failed to even investigate the existence of documents that would have been responsive to discovery requests. The Court does not impose sanctions lightly. The underlying misconduct, however, warrants it." Accordingly, under Fed. R. Civ. P. 37(b), the district court sanctioned defendants by finding, as a matter of law, that OKO had engaged in a general solicitation. This decision meant that OKO's federal preemption defense under Rule 506 was rendered inapplicable.

The district court made a number of other additional rulings during trial. First, the district court ruled on a Rule 50 motion that the investments at issue were, as a matter of law, securities under Ohio Revised Code § 1707.01(B) and §2(a)(1) of the Securities Act of 1933. The court also found that the violation was "material." But the court did not grant judgment as a matter of law because whether OKO had "knowingly" sold unregistered securities remained uncertain. Also, over defendants' objection, the court offered rescission damages in its jury instructions as a measure of damages for the §10(b) claims.

The case was tried before a jury, and the jury ruled in favor of Fencorp on its federal securities claims. The jury then determined that the rescission damages—the price paid for the investments, less any income received—were $3,591,605 for Fencorp. Having stated the rescissory damages as over three million dollars, the jury then entered $847,858 on its verdict form as the total amount of damages for Fencorp.

On the Ohio state non-registration claim, the jury found for Fencorp, but it only awarded $735,496, substantially less than full rescission. The jury found for Fencorp on its state securities fraud claim but awarded no damages. The jury found for Fencorp on its common law fraud claim and awarded $1,404,769. The jury found for Fencorp on its breach of fiduciary duty claim and awarded $43,200. The jury found for defendants on the breach of contract claim and denied punitive damages. Finally, when asked to state the largest total amount of damages for Fencorp, the jury stated $847,858.

Immediately after the jury's verdict was returned, while both parties waited to hear whether punitive damages would be awarded, Fencorp moved under Rule 49 to correct an error. The jury had stated that $847,858 was the largest amount of damages awarded to Fencorp on any single claim, when in fact $1,404,769 was the largest amount. When Fencorp asked the court to amend the verdict to $1,404,769, defendants objected and requested that the court resubmit the matter to the jury. The court agreed with Fencorp that there was a simple transcription error and entered judgment for $1,404,769.

Both parties offered post-trial motions relevant to this appeal. The court granted a Rule 59(e) motion by defendants to change the $1,404,769 common law fraud award to $1,012,835.50 because, as Fencorp conceded, the $1,012,835.50 sum was the maximum amount of money not barred by the statute of repose. Defendants brought a Rule 50(b) motion, arguing that they were entitled to judgment as a matter of law on the §10(b) claims with respect to the statute of limitations and proof of justifiable reliance. The district court denied their motion. Fencorp filed a post-trial motion to alter or amend the judgment, arguing it was entitled to rescissory damages by law. Because the jury stated rescissory damages were $3,591,605 but only awarded $847,858, Fencorp asked the court to amend the judgment to $3,591,605, or, in the least, the $1,012,835.50 within the five-year statute of repose. The district court refused, finding that Fencorp had waived this argument by failing to raise the issue prior to discharge of the jury, as

required by Rule 49(b).[1] Finally, the district court denied Fencorp's argument that Ohio's statute of repose is unconstitutional under the Ohio state constitution. This appeal followed.

## II.

We begin our analysis by considering defendants' arguments that the district court should have granted their motion to dismiss and their motion for summary judgment. We review a district court's decision to deny a motion for summary judgment for an abuse of discretion. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995).

*Ortiz v. Jordan*, 131 S. Ct. 884, 889 (2011), precludes our consideration of most of the issues defendants raise with respect to their motions for summary judgment and to dismiss. But because *Ortiz* leaves open the possibility that cases "involv[ing] . . . [only] disputes about the substance and clarity of pre-existing law" may still be considered, *Id*. at 892, we briefly consider two legal arguments for summary judgment on the state law claims. *See also Owatonna Clinic–Mayo Health Sys. v. Med. Protective Co. of Fort Wayne, Ind.*, 639 F.3d 806, 809–10 (8th Cir. 2011) (recognizing that *Ortiz* did not address the issue of whether a denial of a summary judgment motion was appealable after a final judgment if the denial was based on a legal question rather than on the existence of material facts in issue); *Fireman's Fund Ins. Co. v. North Pacific Ins. Co.*, No. 10-35414, 2011 WL 3510936, (9th Cir. Aug. 11, 2011) (unpublished) (finding *Ortiz* "expressly declined to consider whether . . . 'purely legal issue[s]' [involved in a district court's ruling on a motion for summary judgment] are appealable after a full trial on the merits").

---

[1]We note an important distinction between defendants' Rule 59(e) motion, which was granted, and Fencorp's Rule 59(e) motion, which was denied. Fencorp's motion dealt with an inconsistency in the jury verdict and therefore could have been raised under Rule 49(b), while defendants' motion was a matter of law unrelated to the jury's verdict.

We also note that Fencorp did make a Rule 49(b) motion before the jury was discharged but argued in it for correction of another inconsistency in the verdict—not this one.

First, defendants argue the statute of repose should have been four years, not five years, because the Ohio savings statute and state constitution make the extension of the statute of repose in this case from four years to five unlawful.  The Ohio savings statute provides: "The reenactment, amendment, or repeal of a statute does not . . . affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder."  Ohio Rev. Code § 1.58.  Additionally, Ohio law provides that a statute is unconstitutionally retroactive if it "'creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.'"  *Van Fossen v. Babcock & Wilcox Co.*, 522 N.E.2d 489, 496 (Ohio 1988) (quoting *Cincinnati v. Seasongood*, 21 N.E. 630, 633 (Ohio 1889)).  The new duty created must be substantive, which means the unconstitutionally retroactive statute "impairs or takes away vested rights, affects an accrued substantive right, [or] . . . gives rise to or takes away the right to sue or defend actions at law."  *Id.* (internal citations omitted).

Because we have found no Ohio law—and defendants offer none—which states when a statute of repose creates a substantive right, we look to persuasive authority. We have previously quoted with approval language from the Delaware Supreme Court noting that statutes of repose are substantive provisions.  *See Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 903 (6th Cir. 2002) (quoting with approval *Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*, 489 A.2d 413, 421 (Del. 1984)).  Moreover, it is accepted law in a number of jurisdictions that "the running of a statute of repose creates a vested right not to be sued."  *Wenke v. Gehl, Co.*, 682 N.W.2d 405, 425 (Wis. 2004).  *See also Mills v. Wong*, 155 S.W.3d 916, 920 (Tenn. 2005) ("The running of the statute of repose . . . has a substantive effect."); *Nolan v. Paramount Homes, Inc.*, 518 S.E.2d 789, 792 (N.C. Ct. App. 1999) ("If plaintiff fails to file within the prescribed period, the statute gives defendant a vested right not to be sued.").  In light of these authorities it was not an abuse of discretion for the district court to find that the substantive right for a statute of repose only begins when the limitation period has run.  *See Doe A. v. Diocese of Dallas*, 917 N.E.2d 475, 485 (Ill.

2009) (holding that because the repose period in question was eliminated before it expired, it never operated to insulate defendants from liability and never vested defendants with any substantive rights). Because the limitation period had not run when the Ohio General Assembly amended the statute, defendants had no vested right. Accordingly, we uphold the district court's denial of summary judgment.

Second, defendants argue that state law requires a general accounting among partners; the district court should have granted summary judgment because an accounting was required prior to initiation of the lawsuit. Defendants, however, admit that the case that sets out this requirement, *Dunn v. Zimmerman*, also states: "We recognize . . . that . . . there may be some [partnership disputes] for which a formal accounting would be a pointless exercise. Such cases would involve disputes over a very limited time or number of transactions, whose resolution would not require a searching inquiry into partnership affairs." 631 N.E.2d 1040, 1044 (Ohio 1994). The district court found that a general accounting is not mandatory and that "the underlying rationale for requiring an accounting is missing in this matter," as there were only two partners and no issue regarding whether Fencorp owed money to OKO. The district court did not abuse its discretion in finding that this case falls within the *Zimmerman* exception. We therefore uphold the district court's denial of summary judgment.

## III.

We next consider three arguments defendants make regarding the federal securities claims. First, defendants argue that the district court erred in finding as a matter of law that Fencorp's partnership and joint-venture interests are securities. We previously held in the companion case that the OKO investments qualify as "fractional undivided interests in oil, gas, or other mineral rights" that are securities per 15 U.S.C. § 77b(a)(1). *Nolfi*, *supra*, slip op. at 10. Because defendants merely repeat their argument from the companion case, we affirm the district court for the reasons stated in *Nolfi*.

Second, defendants argue that the district court erred in denying their Rule 50(b) motion concerning whether Fencorp's § 10(b) claims were barred by the two-year statute of limitations and a lack of justifiable reliance. In the companion case, we held that the statute of limitations did not begin to run until the beginning of the first state case and that—under the contextual analysis we employ—plaintiffs have adequately proved justifiable reliance. *Nolfi*, *supra*, slip op. at 11. Because defendants merely repeat the same arguments from the companion case, we affirm the district court for the reasons stated in *Nolfi*.

Third, defendants argue that the jury instructions incorrectly stated the law regarding presumption of reliance and damages for the federal securities fraud claims. We addressed defendants' arguments in the companion case and held the district court did not err by instructing the jury that reliance may be presumed, that rescission is a proper method of determining damages in this case, and that tax benefits do not need to be deducted from the rescissory award. *Nolfi*, *supra*, slip op. at 14-16. Because defendants merely repeat the same arguments we rejected in the companion case, we affirm the district court for the reasons stated in *Nolfi*.

IV.

We conclude our analysis of defendants' appeals by considering their remaining state-law claims.

A.

First, we consider whether the district court erred by imposing discovery sanctions against defendants and granting judgment against them on their federal preemption defense to Fencorp's state securities non-registration claims. Defendants argue that the district court erred in imposing "drastic" discovery sanctions by finding the defendants had engaged in a general solicitation, rendering their federal preemption defense void.

Fed. R. Civ. P. 37(b)(2)(A)(i) provides that when a party does not obey a discovery order, the district court may "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i). We review a district court's decision to impose discovery sanctions under Rule 37 for abuse of discretion. *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994). In the Rule 37 context, an abuse of discretion occurs when "(1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary, or fanciful." *Id.*

The district court did not abuse its discretion. The district court found that defendants had disobeyed three separate discovery requests for documents related to OKO's general solicitation. After defendants objected, the district court determined the materials were discoverable. But defendants did not produce the documents. Then, at a later hearing, an OKO official testified that, although the materials requested still existed, there had been a company-wide order to destroy them, and no official had ordered that the documents be made available to the plaintiffs. These facts demonstrate the reasonableness of the district court's action. Accordingly, we affirm the district court's imposition of discovery sanctions against defendants.

B.

Next, we consider whether the district court erred in finding that the OKO investments were securities under Ohio state securities law. Defendants argue that a partnership where the investor has the right to exercise managerial control is not a security under Ohio law. Managerial control exists when the managing agent can be removed or the partnership can be dissolved by the written consent of partners holding at least three-quarters of the then capital accounts of the partnership. *See Brannon v. Rinzler*, 603 N.E. 2d 1049, 1052 (Ohio Ct. App. 1991) (applying a four-prong test for securities under state law). Because the OKO investments allowed removal of the general partner or dissolution of the partnership upon agreement of 80% of the

partnership interests, defendants state that these investments were like those in *Rinzler*, giving Fencorp managerial control and rendering the investments not securities under Ohio law.

This argument is without merit because defendants do not cite any investment in which Fencorp owned 80% or more; nor are we aware of any. Some representative ownership stakes purchased included 6.25%, 50%, 38%, and 62.5%, but in no instance did Fencorp own 80%. OKO was the managing agent, and OKO owned enough of each investment to veto any dissolution or management change by Fencorp. Thus, under defendants' own standard, Fencorp did not have management control. We therefore reject this argument.

## C.

Finally, we must decide whether the district court erred by failing to instruct the jury about the five-year statute of repose applicable to Fencorp's state law claims and, if so, how this error affected the damages awarded to Fencorp. In its answers to the interrogatories, the jury indicated Fencorp was entitled to $1,404,769 in damages on the common law fraud claim despite the fact—later stipulated to by the parties—that the maximum amount of eligible damages within the statute of repose was only $1,012,835.50. The district court failed to instruct the jury about this five-year statute of repose, and defendants assert that this discrepancy shows "that the jury awarded damages based on transactions barred by the statute of repose."

Jury instructions are reviewed to see "whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *Fisher v. Ford Motor Co.*, 224 F.3d 570, 575–76 (6th Cir. 2000). "While the correctness of jury instructions is a question of law, which we review *de novo*, the refusal to give a specifically requested instruction is reviewed for abuse of discretion. A judgment may be reversed only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 881 (6th Cir. 2007) (internal citation omitted). "'[W]hen judicial action is taken in a discretionary matter, such action cannot be set

aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *United States v. Frost*, 914 F.2d 756, 764 (6th Cir. 1990) (quoting *McBee v. Bomar*, 296 F.2d 235, 237 (6th Cir. 1961)).

We agree that investments made outside the statute of repose should not have been considered by the jury in assessing damages for common law fraud. Never having received any instructions on this limitation, the jury indicated an amount that was nearly $400,000 above the maximum amount Fencorp was entitled to receive for its common law fraud claim. Defendants were clearly prejudiced by the district court's failure to instruct the jury on the five-year statute of repose, and the charge did not adequately submit the applicable law to the jury. The district court erred by failing to include an instruction on the statute of repose.

This error was not harmless, nor was it cured by the district court's amendment of the judgment. The jury indicated Fencorp was entitled to $1,404,769 on the state common law fraud claim, but when asked on the verdict form to state the largest total damages award for Fencorp for any single claim, the jury entered $847,858. The district court granted Fencorp's motion to correct this apparent transcription error and modified the verdict to reflect the larger total of $1,404,769. Later, in an attempt to correct the discrepancy resulting from the judgment being greater than the maximum amount allowed by the statute of repose under the circumstances, the district court granted defendants' Rule 59(e) motion and reduced the judgment from $1,404,769 to $1,012,835.50 with the revised amount reflecting the total amount of transactions still within the statute of repose.

The modification of the judgment by the district court compounded the error. By modifying the judgment to $1,012,835.50, the district court apparently presumed that the full transaction cost—a rescission theory—was the proper measure of damages. There is no indication, however, that the jury intended to award Fencorp the full amount it had invested with defendants. To the contrary, although it was not precluded from using the

full transaction price as the measure of damages, it appears that the jury awarded an amount less than the full price paid by Fencorp and made a smaller award based on the damages "proximately resulting" from defendants' fraud. We can only speculate as to what damages the jury might have awarded if it had been properly instructed on the statute of repose, but it is very possible that the jury would have awarded an amount less than $1,012,835.50. It was improper for the district court to assume that the full transaction price was the appropriate measure of damages under these circumstances.

Because the jury was not properly instructed on the applicable statute of repose for Fencorp's state law fraud claim, its verdict on this claim cannot be considered a valid one. In modifying the verdict amount, the district court was not simply performing a mathematical computation but instead substituting a figure that was only a possible outcome, had the jury considered the statute of repose issue. In fact, given the jury's rejection of rescission as a measure of damages, this possible outcome seems rather unlikely. The only remedy here is a new trial on damages with respect to the state common law fraud claims.

Defendants argue on appeal that under Rule 49(b) the final verdict was inconsistent with the interrogatories, and they cite precedent stating that when interrogatories are inconsistent with each other and with the general verdict, "the trial judge is permitted only to return the jury for further consideration of its answers and verdict, or to order a new trial. Rule 49(b) gives the trial judge no authority to enter judgment for any party in this situation." *Bahamas Agr. Indus. Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1183 (6th Cir. 1975). Defendants argue that the district court's entry of judgment on the verdict was therefore unauthorized. We review a district court's interpretation of a verdict rendered pursuant to Rule 49 for abuse of discretion. *Radvansky v. City of Olmstead Falls*, 496 F.3d 609, 618 (6th Cir. 2007).

Defendants failed to raise this argument that the jury's verdict was internally inconsistent before the jury was discharged and, consequently, have waived this

objection.**2**  *See id.*  Perhaps more importantly, however, this argument is moot, given the setting aside of the verdict on the common law fraud claim.  Any inconsistency in the verdict form no longer exists as a result of setting aside the verdict on the common law fraud claim.

Our ruling with respect to the common law fraud claim in no way affects the verdict returned by the jury on the federal securities claim to which the state statute of repose does not apply.  On remand, therefore, the district court is directed to reinstate the verdict on the federal claim in the amount of $847,858.

V.

On cross-appeal, Fencorp makes two contentions.  The first cross-claim is that the district court erred by refusing to alter or amend the judgment to award full rescission to Fencorp.  In the companion case, we found that the *Nolfi* plaintiffs waived their right to make this claim by not raising the issue before the jury was dismissed.  *Nolfi*, *supra*, slip op. at 17-18.  Similarly, Fencorp failed to make this argument before discharge of the jury.  Therefore, we affirm the district court for the reasons stated in *Nolfi*.

Fencorp's second contention on cross-appeal is that  the district court erred in applying the Ohio securities statute of repose because that statute is contrary to the Ohio state constitution's right to remedy provision.

Article I, section 16 of the Ohio constitution provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."  Ohio Const. art. I, § 16.  Fencorp asserts that this "right to remedy" provision has been used to strike down various statutes of repose that take away the remedy the law would have otherwise permitted.  Ohio courts, for example, struck down the medical

_____

**2**Defense counsel did request that the issue of the amount of damages be returned to the jury for clarification when asked for a response to *plaintiffs'* motion to modify the verdict pursuant to Rule 49. Defendants failed to raise an objection under Rule 49(b) themselves.

malpractice statute of repose. *Hardy v. VerMeulen*, 512 N.E.2d 626, 629 (Ohio 1987). *But see Groch v. Gen. Motors Corp.*, 883 N.E.2d 377, 398 (Ohio 2008) (upholding the products liability statute of repose). Fencorp now asks us to employ the right to remedy provision and hold that the Ohio securities statute of repose is contrary to the Ohio constitution.

We begin our analysis by noting that Ohio law requires a high degree of certainty before a law is declared to be contrary to the state constitution. "All [Ohio] statutes have a strong presumption of constitutionality." *Arbino v. Johnson & Johnson*, 880 N.E.2d 420, 429 (Ohio 2007); *see also Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362, 1366 (6th Cir. 1984) ("[A]cts of the General Assembly are presumed valid under Ohio law, and in cases of doubt should be held constitutional."). For an Ohio court to declare the legislature's action unconstitutional, "it must appear beyond a reasonable doubt that the legislative and constitutional provisions are clearly incompatible." *Id.* (quoting *State ex rel. Dickman v. Defenbacher*, 128 N.E.2d 59, 60 (Ohio 1955)). Furthermore, "the constitutionality of any statute of repose should turn on the particular features of the statute at issue, and . . . such a statute should be evaluated narrowly within its specific context." *Groch*, 883 N.E.2d at 401. A party bringing a facial challenge "must demonstrate that there is no set of circumstances in which the statute would be valid." *Id.*

Recently, the Ohio Supreme Court in *Groch* considered *Brennaman v. R.M.I. Co.*, 639 N.E.2d 425 (Ohio 1994), a case Fencorp cites and upon which other cases Fencorp cites rely. The Ohio Supreme Court criticized the logic of the *Brennaman* decision and stated: "To the extent that *Brennaman* stands for the proposition that all statutes of repose are repugnant to Section 16, Article I [of the Ohio constitution], we expressly reject that conclusion." *Groch*, 883 N.E.2d at 403. The court "confine[d] *Brennaman* to its particular holding" regarding the statute of repose for improvements to real property. *Id.* Instead, the court quoted with approval language from an earlier Ohio Supreme Court case: "the right to remedy provision . . . applies only to existing, vested rights, and it is state law which determines what injuries are recognized and what

remedies are available." *Id.* (quoting *Sedar v. Knowlton Const. Co.*, 551 N.E.2d 938, 947 (Ohio 1990)).

Reviewing the statute "narrowly within its specific context," we emphasize that the securities claims were created by statute and gave plaintiffs substantial protections and privileges not available under common law. Where the legislature creates a new, statutory right, it is reasonable that the legislature also has the ability to shape the contours and limits of that right. To hold otherwise would mean that any statutorily-created right in Ohio, once created, could not be limited by a statute of repose. This policy concern cautions us from declaring the statute unconstitutional.

Fencorp's argument is similar to the arguments used by the Ohio Supreme Court to find medical malpractice statutes of repose unconstitutional. *See Groch*, 883 N.E.2d at 404 (noting instances in which the Ohio Supreme Court struck down medical malpractice statutes of repose because those statutes "took away an existing, actionable negligence claim before the injured person discovered the injury (when the injury had already occurred) or gave the injured person too little time to file suit." ) However, it does not appear to us "beyond a reasonable doubt" that the securities statute, which had created new rights, is analogous to the common-law rights limited by the medical malpractice statutes of repose. Moreover, although the common law fraud claims are similar to medical malpractice claims, Fencorp attempts a facial challenge to the whole statute and not an as-applied challenge to just the common-law elements governed by the statute, so it must demonstrate that there is "no set of circumstances in which the statute would be valid." This Fencorp has failed to do. Finally, no Ohio court has declared this statute of repose unconstitutional, and Ohio appeals courts have not been dissuaded by the medical malpractice cases from applying the securities statute of repose to common-law claims subsumed within the larger securities claims. *See Helman v. EPL Prolong, Inc.*, 743 N.E.2d 484, 493 (Ohio Ct. App. 2000). All of these elements combine and lead us to uphold the constitutionality of the securities statute of repose. We therefore affirm the district court.

VI.

For the foregoing reasons, we set aside the verdict on the state common law fraud claim and direct the district court to reinstate the verdict on the federal securities claim. We otherwise affirm the rulings of the district court and remand the case for further proceedings consistent with this opinion.