NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0239n.06

No. 16-3643

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BARBARA MOODY, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Apr 26, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| HARRY GONGLOFF, et al., | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Defendants, | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| LORAIN METROPOLITAN HOUSING | ) | OHIO |
| AUTHORITY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: COLE, Chief Judge; SUTTON and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Barbara Moody sued the Lorain Metropolitan Housing Authority, alleging a violation of the Fair Housing Act. After a trial, a jury returned a verdict in favor of the housing authority. Moody now argues that the district court improperly rejected one of her proposed jury instructions. We affirm.

Since 2010, Barbara Moody has received Section 8 benefits—a federally-funded program that provides rental assistance to low-income families. In Moody's county, the Lorain Metropolitan Housing Authority administers the program, which requires the housing authority to ensure that Section 8 renters comply with federal regulations. *See generally* 24 C.F.R.

§ 982.404. Those regulations in turn require, among other things, that renters maintain utility service in their residence at all times or risk termination of their benefits. *Id.*

In March 2012, Moody signed a year-long lease and moved into a two-story house. [R. 71 at PageID 985-86.] That August, the housing authority received an anonymous complaint that Moody's electricity had been turned off—an allegation that, if proven, would cause Moody to lose her Section 8 benefits. [*Id.* at 986.]

Around the same time, Moody called the housing authority to complain about the condition of her house. During the call, Moody also said that she needed a single-story house because she could not go up or down stairs. [*Id.*] The staff member who spoke with Moody told her to submit a letter from her doctor verifying her medical need for a single-story house. [*Id.* at 987.]

On September 17, another staff member called Moody to arrange a meeting to discuss both Moody's request for a one-story house and the allegation that her electricity had been turned off. Moody agreed to come in that day but failed to show for the meeting. [*Id.*] The same day, Moody called a different staff member at the housing authority, who asked Moody to send verification that her electric service had been restored. [*Id.* at 988.]

The next day, the housing authority again called Moody and asked her to come in for a meeting. Again, Moody agreed but did not show up. [*Id.* at 988.] Later that day, Moody's doctor faxed a letter to the housing authority stating that Moody had "a medical need for housing on a single level[.]" [*Id.*] Two days later, the housing authority called Moody again, but she did not answer. The next day, the housing authority called Moody a fourth time, with the same result. Finally, the housing authority sent Moody a letter asking her to contact them immediately. [*Id.*]

On September 24, Moody came to the housing authority office in person. Staff members explained that, before the housing authority could approve Moody's request to move to a single-story house, Moody needed her landlord to release her from her current lease. Staff members gave Moody a preprinted release form. They also told her to provide proof that her electric service had been restored and that she would lose her Section 8 benefits if it had not been. [*Id.* at 989.]

After that meeting, the housing authority sent Moody two letters reiterating the need for proof that her electricity had been restored and the consequences if it had not been. [*Id.* at 989-90.] Moody did not respond. Eventually Moody called the housing authority and said that she had been admitted to the hospital for pneumonia. The staff member who spoke to Moody reiterated that she still needed to be released from her lease if she wanted to move to a one-story house. Regarding Moody's electric service, the staff member agreed to work with Moody's social worker from another agency to find proof that her electricity had been restored. At the end of October, without Moody's assistance, the housing authority finally verified that Moody's electric service had been turned back on. [*Id.* at 990.]

Moody never returned to her house. In November, after she was released from the hospital, she went to stay with her family. She did not notify the housing authority or her landlord that she had left her house. When the housing authority learned that Moody had moved out without notifying them—thereby breaching her Section 8 obligations—the housing authority sent out a home inspector. The inspector found that Moody's gas had been shut off. The housing authority immediately informed her that if she failed to restore gas service within 24 hours, she would lose her benefits. Moody called the housing authority the next day, saying that she was vacating her house and that she wanted a hearing. The staff member explained that

Moody could request an informal hearing in writing, but Moody never did so. Moody also never restored gas service to her house. [*Id.* at 991-92.] The housing authority thereafter stopped paying Moody's rent and placed her benefits on hold. [*Id*; R. 84 at PageID 1294.]

In mid-December, after receiving a letter from a fair-housing interest group advocating for Moody, the housing authority approved Moody's request to move to a single-story house. [R. 71 at PageID 992.] She signed a new lease in February 2013. [Appellee Br. 15.]

In September 2014, Moody sued the housing authority, alleging that it failed to act upon her request for a reasonable accommodation under the Fair Housing Act. *See* 42 U.S.C. § 3604(f)(3)(B). The case ultimately went to trial.

Moody requested a jury instruction about the housing authority's response to her request for a one-story house, which the court rejected. After a three day trial—and about an hour's deliberation—the jury found in favor of the housing authority. [R. 85 at PageID 1441.]

Moody's sole argument on appeal is that the district court should have issued her proposed jury instruction. We review for abuse of discretion a district court's refusal to give a requested jury instruction. *Fencorp, Co. v. Ohio Ky. Oil Corp.*, 675 F.3d 933, 943 (6th Cir. 2012). A refusal to give an instruction constitutes an abuse of discretion when "(1) the omitted instruction is a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the requesting party's theory of the case." *Morrison v. B. Braun Med. Inc.*, 663 F.3d 251, 257 (6th Cir. 2011).

The Fair Housing Act requires housing authorities "to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Based on this language, Moody asked the court to instruct the jury that "the housing provider's failure

to promptly grant [a request for an accommodation] or undue delay in making a decision [on such a request] violates the [Act] and may be deemed a denial. An indeterminate delay has the same effect as an outright denial." [R. 68 at PageID 871.]

Whether Moody's proposed jury instruction was a correct statement of the law is open to question. True, we have held that "injury may result when a housing provider unreasonably delays responding to a request for an accommodation and that such a delay may amount to a denial." *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 622 (6th Cir. 2011). But a duty to respond to a request is not necessarily the same as a duty to grant or deny it immediately. In any event, Moody was entitled to her proposed instruction only if the evidence showed that the housing authority's delay in granting her request was unreasonable. *See Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007). Here, Moody asserts that the 87 days between the housing authority's receipt of her doctor's letter and the approval of her request is evidence of unreasonable delay. But Moody herself caused much of the delay by failing to respond to phone calls and letters, and by missing appointments with housing-authority staff members. And the delay may have actually benefitted Moody, because the housing authority used the time to verify that her electricity had been restored. A jury could not have found that the housing authority's delay was unreasonable, so the court did not err in rejecting Moody's proposed instruction. Hence the district court did not abuse its discretion.

The district court's judgment is affirmed.