**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 17a0514n.06**

**No. 16-3835**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Sep 01, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SPECIAL LEARNING, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| STEP BY STEP ACADEMY, INC., | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**BEFORE: BATCHELDER, GIBBONS, and COOK, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Special Learning, Inc. ("Special Learning"), sued Step by Step Academy, Inc. ("SBSA"), for breach of contract. After an eight-day trial, a jury found that SBSA had breached the parties' agreement but awarded Special Learning no damages. Although Special Learning did not object at trial, it later claimed in a post-trial motion that the jury's verdict was inconsistent. The district court deemed this argument waived, however, because Special Learning did not object to the allegedly inconsistent verdict before the jury was discharged. It also found that, regardless of waiver, the jury's verdict was not inconsistent. Because we agree that Special Learning forfeited any objection to the verdict's consistency, we affirm.

I.

Special Learning is a software-development company that focuses on educational software. SBSA is a non-profit mental-health center that provides services to children with

Autism Spectrum Disorder. SBSA needed updated software so that it could maintain accreditation as a rehabilitation facility. To meet that need, SBSA enlisted Special Learning to develop a suite of software programs.

Although the parties began negotiating the development of software for SBSA in early 2012, they did not memorialize the relevant agreement until December of that year. That agreement was known as the Custom Software Development Agreement ("SDA").[1] Importantly, the SDA contained an "estimated total contract price," which was calculated in Exhibits I and II of the SDA. DE 46-2, Page ID 698, 704–06. The estimated total cost for the project was $597,000.

This estimated cost is the source of the parties' dispute. Despite the use of the term "estimated," SBSA purportedly believed that $597,000 represented the final total cost for the software development. That is how the SDA was presented to SBSA's board of directors, and Karen Chung, Special Learning's chief executive officer, was in attendance when it was presented as such. An SBSA board member testified that he recalled the SDA contract price as "slightly under [$]600,000," and noted that an expenditure above the agreed-upon amount would have required board approval. DE 126, Page ID 3206.

The SDA's approximated price turned out to be a woeful underestimate, though not a surprising one to Chung. Chung admitted that, at the time the SDA was signed in December 2012, she knew that $597,000 was insufficient to complete the project and that the "budget was blown." DE 125, Page ID 3110. Of course, she did not tell SBSA's board this, despite her presence at its meetings discussing the SDA. Chung, for her part, does claim that she communicated the SDA's poorly estimated price to SBSA. She first testified that she had emailed her concerns to two SBSA employees, John Solomon and Michele LaMarche, but

---

[1] The SDA is not the parties' only contract, but it is the only one relevant for this appeal.

Chung, despite being given an entire weekend break to conduct a search, could not locate any such email. Chung next testified that she orally communicated the $597,000 price's inadequacy to SBSA. Yet, no evidence corroborates that assertion, and Solomon and LaMarche each denied that Chung made any such communication.

Pursuant to the SDA, Special Learning was to bill SBSA every thirty days. Special Learning's invoices, however, presented their own problems. First, there were timing issues. Chung admitted that she "never submitted [Special Learning's] invoices on time." DE 125, Page ID 3100. This, according to SBSA, led to mistakes in paying those invoices, including paying one invoice too many. Second, the invoices themselves contained little information about what work was being done for SBSA, who was doing the work, or when they did it. And, at trial, Special Learning did not introduce any evidence other than the invoices for proof of the work it allegedly did on SBSA's behalf. SBSA, for its part, did pay almost $50,000 over the estimated contract price before refusing further payment. SBSA paid every Special Learning invoice from February 2012 to March 2013—a total of more than $640,000. SBSA has not received any of the software it was promised.

On January 31, 2014, Special Learning sued SBSA in federal court, alleging various contract-law claims. SBSA counterclaimed, claiming breach of contract, unjust enrichment, and common-law conversion against Chung and Special Learning. Trial began on March 9, 2016, and lasted eight days. The jury was instructed not only on Special Learning's claims, but also on SBSA's defenses, including failure to mitigate damages and promissory fraud.

The district court also prepared a general-verdict form with special interrogatories. For Special Learning's breach-of-the-SDA claim, that form contained four questions. The first read:

> **Question No. 1:** Do you find Defendant breached the [SDA]? If you find the [SDA] agreement was modified by the parties, you must find that the modified [SDA] was breached before finding for Plaintiff on this claim.

DE 98, Page ID 2002. The jury answered "yes" to this question, which required them to skip Questions 2 and 3. *See id.* Question 4 then asked:

> **Question No. 4:** Consider the amount by which Plaintiff was damaged with respect to the [SDA]. Consider any amount by which Plaintiff's damages should be reduced by Plaintiff's own promissory fraud or failure to mitigate damages, if any. Subtract that amount, if any, from Plaintiff's damages. Mark on the line below the total net damages you award to Plaintiff with respect to the [SDA].

*Id.* at 2003. The jury awarded Special Learning no damages for SBSA's breach of the SDA.

After reading the verdict, the district court asked Special Learning's and SBSA's counsel if either wished for the jury to be polled. Each answered in the negative. The district court then informed the parties that it was going to enter the verdict forms, and that it did not "see any inconsistencies in them." DE 127, Page ID 3449. Neither party commented on or objected to this statement.

On April 22, 2016, Special Learning and Chung filed a motion to alter or amend the judgment and for a new trial under Federal Rule of Civil Procedure 59 ("Rule 59 motion"). In that motion, Special Learning argued that the jury's verdict was "grossly inadequate and facially inconsistent" because the jury found that SBSA breached the SDA, but it did not award Special Learning any damages. DE 105, Page ID 2235. To find a breach, Special Learning argued, the jury necessarily had to find that Special Learning was damaged by an amount equal to the unpaid invoices.

The district court denied Special Learning's Rule 59 motion.[2] It did so based on Special Learning's failure to object to the verdict before the jury was discharged, which waived any

---

[2] The district court granted this motion in part. Specifically, it granted Chung's "request for an entry of judgment of no cause for action as to Karen Chung." DE 109, Page ID 2276.

4

claim of inconsistency. Further, because the jury was instructed to offset Special Learning's damages by the amount, if any, that SBSA was damaged by Special Learning's "own promissory fraud or failure to mitigate damages," the district court held that it would have denied Special Learning's motion, regardless of the procedural bar, because the jury's verdict was, in fact, consistent. Special Learning appealed.

## II.

A district court's denial of a Rule 59 motion is reviewed for an abuse of discretion. *See Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 510 (6th Cir. 2016) (motion for new trial); *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 552 (6th Cir. 2012) (motion to alter or amend the judgment). A district court has not abused its discretion unless this court is left with "a definite and firm conviction that the trial court committed a clear error of judgment." *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996) (citation omitted). Unless the district court has relied on "clearly erroneous findings of fact" or has "improperly applie[d] the law," we must uphold the district court's denial of Special Learning's Rule 59 motion. *See Nolfi*, 675 F.3d at 552.

## III.

Special Learning's sole argument on appeal is that the jury rendered an inconsistent verdict when it found SBSA in breach of the SDA but awarded Special Learning no net damages.[3] Special Learning claims that, by finding SBSA breached the SDA, the jury necessarily had to find that SBSA failed to pay invoices totaling $243,753.67. Thus, any award not equaling that amount, Special Learning argues, is inconsistent with a finding of breach. The

---

[3] In its appellate brief, Special Learning also challenges the jury's finding that Special Learning breached various other contracts with SBSA. But this argument was not presented to the district court, nor is it developed on appeal beyond a mere sentence in Special Learning's statement of issues. It is thus waived. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Estate of Quirk v. C.I.R.*, 928 F.2d 751, 757–58 (6th Cir. 1991) (noting that this court will not consider an argument not presented to the district court).

district court found that Special Learning waived any challenge to the consistency of the verdict by failing to object under Fed. R. Civ. P. 49(b) before the jury was discharged. We agree.

Rule 49(b) permits a trial judge to "submit to the jury forms for a general verdict, together with written questions on one or more issues of fact that the jury must decide." The rule also prescribes the procedure for remedying an inconsistency between the jury's interrogatory answers and its general verdict. Specifically, if the interrogatory answers are "consistent with each other but one or more is inconsistent with the general verdict," as Special Learning alleges here, a party may move the district court to either enter an appropriate judgment consistent with the interrogatory answers, direct the jury to reconsider its answers, or order a new trial. Fed. R. Civ. P. 49(b)(3); *Nolfi*, 675 F.3d at 552.

It is well-settled in this circuit "that if, after answers to special interrogatories are read, a party does not object to the discharge of the jury or raise any issue with respect to the jury's responses, that party should be deemed to have waived any objection as to inconsistency, ambiguity, or lack of clarity in the answers." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 618 (6th Cir. 2007) (citation omitted); *see also Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 538 (6th Cir. 2014); *Nolfi*, 675 F.3d at 551; *Fencorp, Co. v. Ohio Ky. Oil Corp.*, 675 F.3d 933, 944 (6th Cir. 2012). The purpose of this rule "is to allow the original jury to eliminate any inconsistencies without the need to present the evidence to a new jury. This prevents a dissatisfied party from misusing procedural rules and obtaining a new trial for an asserted inconsistent verdict." *Radvansky*, 496 F.3d at 618 (citation omitted).

After reading the verdict, the district court asked Special Learning's and SBSA's counsel if either wished for the jury to be polled. Each declined. The district court then informed the parties that it was going to enter the verdict forms, and that it did not "see any inconsistencies in

them."[4]   DE 127, Page ID 3449.   Neither party commented on or objected to this statement. Despite this, Special Learning later claimed in its Rule 59 motion that the jury's interrogatory answers were inconsistent with its verdict because a finding of breach necessitated an award of $243,753.67 in damages—not $0 as the jury found.   But, by not objecting under Rule 49(b) before the jury was discharged, Special Learning waived the right to challenge this alleged inconsistency in a post-trial motion.   *See Nolfi*, 675 F.3d at 552.   Thus, we find that the district court did not abuse its discretion in denying Special Learning's Rule 59 motion.[5]   *See id.*

IV.

For the foregoing reasons, we affirm.

---

[4] It is unclear from the record whether this statement was made after the jury was discharged or contemporaneous with its discharge.  The timing of this statement is immaterial, however, because the district court had no duty to alert Special Learning to a potential inconsistency in the verdict.  It was Special Learning's obligation to recognize such inconsistency and object prior to the jury being discharged.  *See Radvansky*, 496 F.3d at 618.

[5] Because this finding is dispositive of Special Learning's appeal, we need not decide whether the verdict was, in fact, consistent.